# CLARK v. MORRIS.*

### BROKERS; INSTRUCTIONS TO JURY.

1. Where a broker is employed to sell property on commission, and he brings the owner, or the agency through which he is employed, and the prospective purchaser together, and a sale results, though it be accomplished by the owner or such agency without any further assistance by the broker, the broker is entitled to his full commission, the same as if he had conducted all the details of the sale.

2. Where a broker employed to solicit subscriptions to the stock of a mining corporation upon an agreement that he should receive a commission on all subscriptions obtained by him, or through his influence, was told by his principal not to see a party with whom he was negotiating until further notice, and he obeyed, he is entitled to his. commissions on a subscription subsequently obtained by the principal from such party.

3. The instructions of the trial court to the jury should apply the law to. the facts as disclosed in the case in which they are given. An instruction correctly stating the law in one case, if given in another case, though similar, might be erroneous.

4. In an action by a broker for his commissions for obtaining subscriptions. to stock in a mining company under a contract entitling him to commissions on subscriptions obtained by him or through his influence, where it appears that after obtaining a subscription from one party, for which he was paid his commission, and obtaining his promise to endeavor to interest another party in the stock, he was prevented by his principal from continuing his negotiations to obtain an additional subscription from the first party and a subscription from the other,

---

*Brokers.—As to when a broker to sell real estate is entitled to commissions, see note to McGavock v. Woodlief, 15 L. ed. U. S. 884. As to when real-estate broker is considered as the procuring cause of the sale or exchange effected, see note to Hoadley v. Savings Bank, 44 L.R.A. 321. And as to performance by a real-estate broker of his contract to find a purchaser or effect an exchange of his principal's property, see note to Lunney v. Healey, 44 L.R.A. 593.

and that such subscriptions were subsequently made, it is not error for the trial court to instruct the jury that they are entitled to infer that the broker was the procuring cause of the new subscriptions, and also to infer that if the stock certificates were actually delivered to the subscribers they were paid for by them, in the absence of any evidence to the contrary.

5. If a broker employed to obtain subscriptions to the stock in a mining company at a certain price, brings his principal and a prospective subscriber together, and the principal, without notice to the broker, sells the stock for a less price, the broker is entitled to his commission on the price for which he was employed to sell. If the sale is for a greater price, the principal has no cause to complain, in a suit by the broker for his commission on the contract price.

No. 1789.   Submitted February 7, 1908.   Decided March 10, 1908.

HEARING on an appeal by the defendants from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action of assumpsit.                        *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an action at law instituted in the supreme court of the District of Columbia by appellee, Henry P. Morris, against Edwin C. Clark and Eugene Davis, trading as Clark & Company, and the Mexican Mining & Exploration Company, a corporation. The declaration is in common counts, and the demand is for services rendered by appellee in securing subscriptions to the capital stock of the Mexican Mining & Exploration Company. The action is based upon an agreement in the form of a letter addressed to the plaintiff in February, 1903, sent by Clark & Company, as follows: "We agree to employ you to solicit subscriptions to the stock of the Mexican Mining & Exploration Company, and will pay you a commission of 20 per cent on all subscriptions obtained by you, or through your influence." Appellee admitted that he was only to be paid commissions upon such subscriptions as were paid.

The facts appearing in the record are to the effect that appellee agreed to the terms of said employment, and had confer-

ences from time to time with appellant Davis, of Clark & Company, and with the officers and directors of the mining company. During his employment he procured subscriptions to said stock, at $2.50 per share, from one Cowen, of 5,000 shares, amounting to $12,500, together with some other smaller subscriptions. When Cowen subscribed, he stated to appellee that he would take 5,000 shares, and would endeavor to interest some of his friends in the stock,—among others, one Garrett. The appellee informed appellant Davis of his conversation with Cowen, and stated that he would attempt to secure an additional subscription from him, and also see him regarding the subscription to Garrett. Appellee, under the direction of Davis, continued his efforts with Cowen, and together they called upon Davis at the office of the mining company, in Washington. Davis directed appellee to return to Baltimore on the same train with Cowen, and talk further with him about the purchase of stock. Appellee returned to Baltimore, as directed, with Cowen, discussing with him the matter of an additional subscription, and also the best method of procuring the Garrett subscription. Appellee was preparing to go to see Garrett when Davis instructed him not to go until he should notify him. Later, appellee spoke to Davis regarding Garrett's coming into the company, and Davis replied, "Not to worry, that Mr. Cowen would see him at the earliest time convenient." Appellee called upon Cowen to urge him to see Garrett, to which Cowen replied, "I will see him in a day or so." Appellee was urging Davis almost daily to let him see Garrett, and, if possible, procure his subscription, but Davis still requested him to wait.

Later, in the spring or summer of 1903, Cowen, who had become a director in the defendant company, and Garrett, visited the mines of the company, in Mexico. Considerable correspondence between appellee and Clark & Company and Davis appears in the record, showing that up to the time that Cowen and Garrett returned from Mexico, in the summer of 1903, Clark & Company and Davis were not only urging appellee to dispose of the stock of the company, but had induced appellee himself to invest in the stock of the company to the amount of $2,500.

It further appears that, on the return of Cowen and Garrett from Mexico, appellee inquired of Davis if they had subscribed, and was told that they had not. Appellee testified, which is not contradicted, that Davis avoided meeting him from that time on, although before that time they were in almost daily communication; that shortly after the return of Garrett and Cowen from Mexico he learned that Garrett had subscribed for $12,500 worth of stock, and that Cowen had increased his holdings by taking $6,500 additional stock. It is for the recovery of the commission on the sale of this stock that this suit was brought in the lower court.

The record evidence of sales of stock to Cowen and Garrett are disclosed by two receipts, which are as follows:

June 10th, 1903.

Received from Clark & Company Interim Certificate No. 151 of Mexican Mining and Exploration Company for 10,000 shares.

Baltimore. John K. Cowen.

January 29, 1904.

Received from Clark & Company, Interim Certificate No. 244 of The Mexican Mining & Exploration Company for 5,000 shares.

Continental Building, Baltimore, Md. Robert Garrett.

The aforegoing facts were not controverted by any evidence offered on behalf of the appellants.

*Mr. Henry E. Davis* for the appellants.

*Mr. Alexander Wolf* and *Mr. Maurice D. Rosenburg* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Appellee was dealing with appellants in the capacity of an agent or broker. The law is well settled that where a broker

is employed to sell property upon a commission, and by his
efforts brings the owner, or agency through which he is em-
ployed, and the prospective purchaser together, and a sale re-
sults, though it be accomplished by the owner or such agency
without any further assistance by the broker, the broker is en-
titled to his full commission, the same as if he had conducted
all the details of the sale. The contract in this case provided
that appellee should be paid not only for the sales he made, but
for the sales that the company, or Clark & Company, its fiscal
agents, should make through his influence. The agreement was
broad enough to comprehend any prospective purchaser whom
appellee, through his efforts, should discover and bring to ap-
pellants, and who, as a result of his influence, should after-
wards purchase stock and pay for it. We think the efforts of
appellee as to both Cowen and Garrett bring him within the
rule. The evidence discloses that when Cowen made his first
purchase of stock through the efforts of appellee, he not only
led appellee to believe that he would increase his holdings, but
assured him that he would assist him in getting Garrett to buy
some of the stock. When appellee reported this information
to Davis, he was instructed to go with Cowen to Baltimore, and
not only sell more stock to Cowen, but to see Garrett. Before
appellee could see Garrett, Davis instructed him not to see him
until he could notify him. Appellee was putting forth his best
efforts to dispose of the stock, both to Cowen and Garrett, when
he was deterred by Davis from further negotiating with Gar-
rett. The principal cannot interfere with the operations of
his broker in that way, and thereby escape the payment of com-
missions that otherwise would have been earned by such broker.

The only question left for determination is, was the stock
for which the receipts of Cowen and Garrett were given paid for?
The court instructed the jury as follows: "The plaintiff, if he
is entitled to recover at all, is entitled to recover only to the
extent that he proves, by a preponderance of the evidence, that
the subscription to the stock described in the declaration was
procured by him or through his influence, and that the sub-
scription was actually paid for by the subscriber. It is not,

however, necessary that the proof should be direct. If there
is testimony on those points in the case,—if such facts develop
which will justify the inference,—you may find the necessary
element present. But it is for you to say whether or not that
inference should attach. For example, if it is proven that the
first Cowen subscription was procured through the influence of
the plaintiff, and that there was a second subscription, then you
are justified in inferring that the influence which procured the
first was the same that procured the second, in the absence of
anything to the contrary. And so, in respect to the question of
payment for stock, if you find that stock certificates were actu-
ally delivered to subscribers, you may infer that they were
paid for by the subscribers, in the absence of anything to the
contrary. It is not a necessary inference, but one the drawing
of which is in your discretion and judgment according to the
case." The instructions are assailed by counsel for appellants
on two points: First, that the fact that the first Cowen sub-
scription was procured through the influence of the appellee
will not justify an inference that the same influence procured
the second; and, second, that the delivery of certificates of stock
to subscribers is not a presumption that such stock was paid for.
The instructions of the court to the jury should apply the law
to the facts as disclosed in the case in which they are given.
An instruction correctly stating the law in one case, if given in
another case, though similar, might be erroneous. We think
that the court committed no error in the instructions here given,
when applied to the facts of this case. The evidence of appel-
lee's dealings with Cowen, and the circumstances under which
appellants prevented him from negotiating with Garrett, to-
gether with the receipts from Cowen and Garrett, showing the
delivery of stock for which appellee testified he was informed
Garrett paid $12,500 and Cowen $6,500 raises sufficient pre-
sumption of purchase and payment to cast the burden upon the
appellants of removing that presumption. This the appellants
have failed to do, and the court committed no error in in-
structing the jury that these facts could be presumed from the
evidence adduced in the case. It must be remembered that no

evidence was offered on the part of appellants to contradict
any of the facts here stated. Appellee was not required, as
insisted by counsel for appellants, to bring in the books of
the company, or to produce further evidence of payment. The
evidence produced by appellee was sufficient, in the absence of
any contradiction, to shift the burden to the appellants of estab-
lishing the fact that payment had not been made, if such was
the case. This was a fact peculiarly within their possession,
and which they readily could have established.

The price for which this stock was actually sold to Cowen and
Garrett is immaterial. The price for which appellee was di-
rected to negotiate for the sale of the stock was $2.50 per share.
It was upon that basis that he brought the parties together.
If the stock in question was sold for a less price than appellee
was authorized to take, and the sale was consummated without
notice of the reduction in price to appellee, he is entitled to re-
cover his commission on the basis of a sale at $2.50 per share.
If they sold the stock at a greater price than that given ap-
pellee upon which to base his negotiations, they have not been
damaged and cannot be heard to complain.

The judgment is therefore affirmed, with costs, and it is so
ordered.                                    *Affirmed.*