## SIMMS *v.* BOOTH.*

---

REAL ESTATE BROKERS; INDUCING SALE; COMPENSATION.

1. When a real estate broker authorized to make a sale is the procuring cause of a sale made by the owner, he is entitled to his commission.

---

*Brokers—Commission.*—As to broker's right to commissions when sale is made by owner in ignorance of former's instrumentality in procuring purchaser, see note to *Quist* v. *Goodfellow,* 8 L.R.A.(N.S.) 153; as to the general question when a real estate broker is to be regarded as the procuring cause of a sale or exchange, see note to *Hoadley* v. *Savings Bank,* 44 L.R.A. 321.

even though the owner is ignorant of such fact at the time, and not-withstanding he sells at a price and upon different terms from those mentioned to the broker. (Citing *Bryan* v. *Abert,* 3 App. D. C. 180.)

2. A real estate broker engaged to sell land for a stipulated commission, who introduces a customer to the owner, who quotes the customer a price, may be found to have been the inducing cause of a sale to the customer's father-in-law, where the evidence is conflicting as to whether the owner knew of the relationship before the sale was made, since, if the owner knew of the relationship before making the sale, he was put upon inquiry as to the broker's connection with the deal.

No. 2639. Submitted April 6, 1914. Decided May 4, 1914.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action for the recovery of a broker's commission. *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment for Roland C. Booth, the plaintiff, a real estate agent, appellee here, in the supreme court of the District in an action for the recovery of a commission from Andrew J. Simms, the defendant, appellant here, for serv-ices alleged to have been rendered in the sale of defendant's coal yard.

The defendant moved for an instructive verdict, which mo-tion was denied and the case submitted to the jury. The sole question here is whether the court erred in denying defendant's motion.

The plaintiff testified that on November 2, 1912, a Mr. Addi-son W. Smith called at his office in reference to the purchase of a coal yard business in the northwest section of the city, and was told that the coal yard at 11th street and Rhode Island avenue (which belonged to the defendant) was for sale. The same afternoon plaintiff and an office assistant by the name of Ayers, accompanied by Mr. Smith, went to the defendant's yard, and plaintiff introduced Mr. Smith to the defendant as a pro-spective purchaser. The property was then examined and dif-ferent prices were quoted, dependent upon the articles desired.

Mr. Smith then informed the defendant "that he would have
to talk with his father about it, and come back and decide
whether they would want the wagons and how many horses;"
that defendant agreed to pay plaintiff a commission of 5 per
cent of the selling price in the event of a sale being made; that
plaintiff heard nothing more about the matter until the follow-
ing Tuesday, when the defendant telephoned him that the yard
had been sold. Plaintiff thereupon asked him if he had sold it
to Mr. Smith, to which the defendant replied that he had sold it
"to another customer." After some argument the defendant told
the plaintiff that the customer was Mr. Chapman, but did not
disclose that Mr. Chapman was the father-in-law of Mr. Smith.
After learning this fact, plaintiff sought a further interview
with the defendant, who then said that during the conference
between Mr. Chapman and the defendant, which resulted in
the sale, Mr. Chapman informed the defendant that Mr. Smith
was his son-in-law. Plaintiff, at no time prior to the sale, saw
Mr. Chapman, nor did he know of the relationship between him
and Mr. Smith.

Mr. Smith was called by the plaintiff and testified that at the
initial interview between the plaintiff, defendant, and himself,
"he got a list of articles Simms (the defendant) wished to sell
together with several prices, some including stock and some
without stock; that he told Simms he would communicate with
his father and would let him know later; that he did not know
the prices of stock, horses, wagons, etc., and did not know
whether 'we wish to purchase anything of that kind;' that when
he referred to his father, he meant Mr. Chapman, his father-in-
law; that he was buying the coal yard for Mr. Chapman; that
he saw Chapman at home that night and showed him the list he
had received from Simms." He did not inform the plaintiff,
nor the defendant, that he was acting for Mr. Chapman. He
subsequently notified defendant that his father considered the
price too high.

The defendant testified that at the initial interview he
"showed Smith the outfit, made two prices, one for the whole
outfit and one for the office fixtures, scales, and so on; that

Smith said he could not tell about it then, but would have to communicate with his father, in New York, and the witness agreed to wait upon him; that the understanding was that Smith was to let him know the following Monday;" that the same evening Mr. Chapman came to his office and said: "I understand you want to sell this place, Mr. Willis up at Fourteenth and T streets said you wanted to sell it;" that he informed Mr. Chapman that a young man by the name of Smith had an option on the place until Monday, and Mr. Chapman thereupon said that if he did not deal with Mr. Smith, to come to see him; that Mr. Smith came back on Monday and stated he had heard from his father, who did not like the deal, and that the defendant should consider the deal off; that the defendant then went to see Mr. Chapman, and they closed the deal at $1,100; that he had agreed to pay plaintiff a commission of 5 per cent if he sold the yard; "that he *thinks* the price submitted to Smith was $1,850, and he sold it to Chapman for $1,100; that he excluded from the articles priced to Smith two wagons valued at $50 each." Under cross-examination witness stated that *"after he had sold the yard to Chapman* at Chapman's office, Chapman asked him *if his option was up with Smith,* and what kind of a looking fellow Smith was; that the witness described Smith and told Chapman he had a wife, whereupon Chapman asked the witness what kind of a looking lady she was, and upon being told, said, 'That is my daughter;' *that was after I had made Mr. Chapman the price of the coal yard and all.* Mr. Chapman said that was his daughter and Smith was his son-in-law; that the witness did not know before the deal was closed that Smith was Chapman's son-in-law."

*Mr. J. W. Cox* and *Mr. Joseph T. Sherier,* for the appellant:

1. Plaintiff was not entitled to compensation, because he did not procure the purchaser. *Moore & Hill* v. *Brueninger,* 34 App. D. C. 86, 91; *Gleason* v. *Nelson,* 162 Mass. 245, 249; *Goldstein* v. *Walters,* 15 Daly, 397; *Vandyke* v. *Walker,* 49 Mo. App. 381, 386; *Sievers* v. *Griffin,* 14 Ill. App. 63, 66; *Ramsey*

v. *West,* 31 Mo. App. 676, 687; *Burkholder* v. *Fonner,* 34 Neb. 1, 4; *Elwell* v. *Chamberlain,* 31 N. Y. 611, 619; 31 Cyc. 1598.

*Mr. Eugene H. McLachlen,* for the appellee:

1. The facts of this case establish beyond any doubt that the plaintiff was the procuring cause of the sale. *Lincoln* v. *McClatchie,* 36 Conn. 136; *Bryan* v. *Abert,* 3 App. D. C. 180; *Shannon* v. *Potts,* 117 Ill. App. 80; *Glade* v. *Eastern Ill. M. Co.* 129 Mo. App. 443; *First Nat. Bank* v. *Fox,* 41 W. L. R. 334; *Goldsmith* v. *Coxe,* 80 S. C. 341, 346.

2. The question of whether the plaintiff was the procuring cause of the sale was properly left to the jury. *Shea Realty Corp.* v. *Page,* 111 Va. 490; *Rooney* v. *King,* 64 Atl. (N. J.) 954. See also *Slagle* v. *Russell,* 114 Md. 418, 433.

3. It is immaterial whether the defendant knew before or after taking the deposit that the man he was dealing with was procured through the plaintiff. *Bryan* v. *Abert,* 3 App. D. C. 180.

4. Though Smith may have deceived the defendant about whom he was acting for, and Chapman may have misled the defendant as to where he learned of the yard being for sale, yet their actions cannot be imputed to the plaintiff. *Bryan* v. *Abert,* cited *supra; Cohen* v. *Hirschfield,* 16 Daly, 96, s. c. 9 N. Y. S. 512.

*Mr. Justice* Robb delivered the opinion of the Court:

In *Bryan* v. *Abert,* 3 App. D. C. 180, which was decided twenty years ago, and hence has been the law of this jurisdiction for that length of time, it was ruled that when a broker authorized to make a sale is the procuring cause of the sale made by the owner, he is entitled to his commission, even though the owner is ignorant of it at the time, and, under the facts there disclosed, notwithstanding that he sells at a price and upon different terms from those mentioned to the broker. The facts there and here do not differ materially, and the rule there an-

nounced is quite generally accepted. *Lloyd* v. *Matthews,* 51 N. Y. 124; *Sussdorff* v. *Schmidt,* 55 N. Y. 319; *Graves* v. *Bains,* 78 Tex. 92, 14 S. W. 256; *Rounds* v. *Alee,* 116 Iowa, 345, 89 N. W. 1098; *Craig* v. *Wead,* 58 Neb. 782, 79 N. W. 718; *Lincoln* v. *McClatchie,* 36 Conn. 136.

The evidence before the jury clearly warranted the finding that the plaintiff was the procuring cause of the sale. Moreover, even under the rule contended for by the defendant, the court would not have been justified, under the evidence, in directing a verdict for him, since there was evidence tending to show that the defendant, before the contract of sale was entered into, either knew or ought to have known that the plaintiff was instrumental in inducing it. *Quist* v. *Goodfellow,* 99 Minn. 509, 8 L.R.A. (N.S.) 153, 110 N. W. 65, 9 Ann. Cas. 431; *Soule* v. *Deering,* 87 Me. 365, 32 Atl. 998. The plaintiff testified that in an interview with the defendant the defendant stated that, during his conversation with Chapman which resulted in the sale, that is, before the sale was made, Mr. Chapman had informed him of the relationship existing between Mr. Smith and Mr. Chapman. If this was so, it certainly put the defendant upon inquiry as to the facts, which would have shown the plaintiff's connection with the deal. The good faith of the plaintiff is not questioned, nor does it appear that the defendant was in any way prejudiced by his failure sooner to learn that Smith was the agent of Chapman. *Handley* v. *Shaffer,* 177 Ala. 636, 59 So. 286; *Gilbert* v. *McCullough,* 146 Iowa, 333, 125 N. W. 173.

The judgment must be affirmed, with costs.      *Affirmed.*