## RIEFFER v. McGUIRE.
### No. 525.

Municipal Court of Appeals for the
District of Columbia
July 31, 1947.

Mark P. Friedlander and Leroy A. Brill, both of Washington, D. C., for appellant.

Charles H. Quimby, of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

On July 12, 1946, defendant A. B. McGuire was the owner of property at 1765 Que Street, Northwest. A Mrs. Work was in possession thereof under a lease which had about a year to run and was operating a rooming house business there.

On that date plaintiff Alice Rieffer, trading as Dupont Realty Company, obtained from McGuire a written 30-day exclusive listing authorizing her to sell the real property for $25,000. During the 30-day period plaintiff did not obtain or submit to the owner any contract of purchase at $25,000 or at any other figure. On August 28, 1946, the property was sold to Mrs. Work for $21,500 through another agent to whom the owner, McGuire, paid a commission of $1,075. Plaintiff then brought this suit against McGuire claiming to have been the procuring cause of the sale to Mrs. Work. The trial court found for defendant and this appeal by plaintiff followed.

We have carefully studied the evidence, which is before us in the form of a stenographic transcript. It reveals various complications and side issues which are not important on this appeal and which we need not discuss. It discloses that the principal issue was whether plaintiff was the procuring cause of the sale. That issue, as it usually is, was one of fact;[1] and that issue the trial judge specifically decided in favor of defendant. Viewed in its entirety and tested by established legal principles, we are satisfied that the evidence supported such finding.

[1] Lindquist v. Steele, D.C.Mun.App., 42 A.2d 925. See also Henderson v. Porter, D.C. Mun.App., 52 A.2d 779.

■ In the first place it is undisputed that no sale was consummated until after the expiration of plaintiff's exclusive contract. After the expiration of such a contract, the principal, if acting without fault, fraud or bad faith, has a right to sell either to a purchaser to whom his attention may first have been called by the broker or to anyone else, as the exclusive contract has then spent its force.[2] But when a purchaser has been interested in the property by the broker during the period of the exclusive listing, and the negotiations are deliberately postponed beyond the period of the listing, and the sale is then consummated with the purchaser interested by the broker, the broker may still be considered the procuring cause of the sale.[3] But the issue remains as to whether the suing broker was the procuring cause.

Here plaintiff and her salesman testified that immediately after obtaining the exclusive listing they went to see Mrs. Work and attempted to interest her in the purchase of the property. But Mrs. Work, who was produced as a witness by plaintiff, denied this. According to her account of this conversation, plaintiff and her salesman told her they were selling the real estate to another person, and that the purpose of their call was to persuade her to give them a listing for the sale of her rooming house business. To this Mrs. Work said only that she was going to Florida and would do nothing about it until after her return. Mrs. Work also made candid mention of the fact that "she always dealt through a friend in the real estate business." As shown by plaintiff's own evidence this was the extent to which plaintiff stimulated the interest of Mrs. Work in the purchase. When Mrs. Work returned from Florida she did not communicate with plaintiff nor did plaintiff attempt to communicate with her. In the meantime the exclusive listing had expired and though plaintiff had taken several other prospects to the property nothing came of it.

■ Soon after Mrs. Work returned from Florida she learned that the owner had refused to authorize transfer of her lease, and that she would therefore be unable to sell her business. She decided to take action towards buying the property because her children wanted the money they had invested in her rooming house business. She then sought out another agent, Mamie Owens, who negotiated the purchase and was paid a commission of $1,075 by the owner. There were no direct negotiations between Mrs. Work and the owner. Having all these circumstances in mind we think the trial judge was justified in ruling that plaintiff had not shown herself to be the procuring cause of the sale.

■ Nor was there in the case any evidence which would have justified (much less required) the trial judge in ruling that there was any collusion between the owner and the purchaser or between the owner and the successful broker. It is true that the owner had once told plaintiff that he was taking the property off the market. But there is no indication that such announcement was not made in complete good faith nor that the owner's subsequent decision to sell constituted a breach of faith with plaintiff or a mark of collusion with the purchaser or the second agent. That being so, the unsuccessful broker is entitled to no commission.[4]

Appellant insists that the purchase of the property by Mrs. Work was stimulated by her and that there was no other cause of the sale. But the uncontradicted evidence of Mrs. Work was that when she returned from Florida she realized that someone else might purchase the property and that inasmuch as the owner had refused to approve a transfer of her lease she had better buy the property to protect her investment in the rooming house business. This was cause enough to prod Mrs. Work into buying the property. It could very reasonably have been considered the controlling reason for the purchase. Also it might very properly have been accepted as negativing the contention that the efforts of plaintiff alone had resulted in the sale.

---

[2] See cases collected in 44 L.R.A. 347; see also cases in 21 L.R.A.(N.S.) 328.

[3] Lady v. Realty Associates, Inc., D.C. Mun.App., 31 A.2d 875.

[4] Davidson v. Jones, D.C.Mun.App., 34 A.2d 261.

Appellant lays great stress upon the fact that the trial judge in announcing his decision said that he believed "the plaintiff did talk to this lady, that they did talk to her and ask her to sell the property." The trial judge added, however, that he also believed "that they made no progress, they did not interest her."

Appellant also argues that the trial court "predicated its opinion, apparently, in part, on an abandonment." In announcing his decision the trial judge pointed out that after Mrs. Work said she was going to Florida plaintiff did nothing further in the case, and that "they definitely gave it up at the time when their 30-days agency terminated, and that was the end of their connection with the property." This finding was supported by plaintiff's own evidence, which indicated a long period of inaction following the initial talk with Mrs. Work. Whether such inaction be termed abandonment or not it is a clearly significant circumstance bearing on the question of procuring cause.

The case is quite unlike Lady v. Realty Associates, Inc., D.C.Mun.App., 31 A.2d 875, which appellant cites. There we said that where a person is interested in property by a broker and thereafter becomes the purchaser by completing negotiations directly with the owner, the broker must be regarded as the procuring cause of the sale. There the purchaser became interested in the property by seeing the broker's advertisement and by being shown the property by the broker. Here the purchaser knew the owner and knew all about the property, because she was actually occupying it long before the plaintiff broker came upon the scene. In the Lady case we said there could be no real "abandonment" by an act induced by misrepresentation and fraud. Here as we have seen there was no evidence of misrepresentation or fraud.

Affirmed.