**Richard REIMAN, d/b/a Reiman & Company, Appellant,**

v.

**INTERNATIONAL HOSPITALITY GROUP, et al., Appellees.**

No. 87–105.

District of Columbia Court of Appeals.

Argued Jan. 19, 1989.
Decided May 4, 1989.

David S. Greene, for appellant.

W. John McNally, III, Washington, D.C., for appellees.

Before ROGERS, Chief Judge, and NEWMAN and BELSON, Associate Judges.

ROGERS, Chief Judge:

Appellant Richard Reiman contends the trial judge erred in failing to apply the prevention doctrine to excuse the closing of a real estate transaction as a condition precedent to appellee International Hospitality Group's (IHG)[1] promise to pay him brokerage commissions. He appeals from the denial of his motion under Super.Ct. Civ.R. 59(e) for reconsideration of the dismissal under Super Ct.Civ.R. 41(b) of his breach of contract claim against IHG for a brokerage commission of $200,000 plus interest in connection with the sale and purchase of the Connecticut Inn Motel. He also appeals from the granting of IHG's motion for reconsideration of the judgment awarding him a separate $50,000 commission for additional services to IHG in connection with its purchase of the motel. The trial judge ruled that IHG did not have the duty to pay the commissions because all of the agreements between the parties made payment contingent upon the transfer of all rights in the motel to IHG which did not occur. However, the trial judge also found, based on Reiman's case-in-chief, that IHG wrongfully prevented the closing of the transaction. We hold that Reiman stated a claim upon which relief could be

---

1. The other appellees are Henry Lieberman and Bromley Smith. For ease of reference we refer to appellees as IHG.

granted and the trial judge erred in refusing to apply the prevention doctrine to excuse the condition precedent to Reiman's receipt of the commissions where IHG made occurrence of the condition precedent impossible through its own fault or misconduct. Accordingly, we reverse and remand for a new trial.

### I.

In 1981, appellant Richard Reiman, a licensed D.C. real estate broker, approached the Connecticut Inn Partnership (CIP) with a proposal to list the Connecticut Inn Motel for sale. CIP accepted the proposal and entered into a listing agreement authorizing Reiman to market the property. CIP and Reiman orally agreed that Reiman would receive a $200,000 commission at the closing.

Of potential buyers to whom Reiman showed the motel, International Hospitality Group, Ltd. (IHG) sent CIP a letter on August 19, 1982, expressing its intent to purchase the motel. Three months later, on November 16, 1982, CIP and 4400 Connecticut Avenue Associates (CAA), a D.C. limited partnership formed by IHG, entered into a written purchase agreement. IHG assumed CIP's obligation to pay appellant's $200,000 commission and the purchase price was accordingly reduced from $4,300,-000 to $4,100,000.

Paragraph 14 of the purchase agreement provided that Reiman's commission would be "earned, due and payable only upon the transfer of all Seller's right, title and interest in the Property to Purchaser." Reiman signed the agreement indicating that he agreed to the terms of paragraph 14. The purchase agreement established a closing date of December 1, 1982 but provided that if "all conditions precedent to the Purchaser's obligations have not been satisfied or all of Seller's representations and warranties are not true and correct on the date scheduled for the Closing," then either CIP or IHG could extend the closing date for a "reasonable period of time in order to afford additional time to satisfy such conditions and representations and warranties." However, in no event was the closing to extend beyond June 1, 1983.

IHG also agreed to pay Reiman a separate commission of $50,000 for additional services beyond the normal brokerage services. This agreement was set forth in three letters all of which provided that the commission would be paid only in the event of a closing by IHG.[2]

IHG never went to closing on the motel. The outstanding debts on the motel increased in four months from approximately $549,000 in mid September 1982 to $687,923 by January 12, 1983, five days before closing was to occur. IHG was "staggered" by the news and immediately hand-delivered a letter to CIP requesting postponement of the closing "to a date to be mutually determined" and suggesting that the purchase deal be restructured. CIP, through its managing partner Bruce Lyons, agreed to do whatever was necessary to "get the deal to settlement."

On January 17, 1983, CIP and IHG met to discuss the status of the transaction. IHG proposed changes in the purchase agreement, including reducing the purchase price of the motel, extending the note payments, and making the purchase contingent on IHG obtaining a lease of the motel by the University of District of Columbia for use as a dormitory. CIP's attorney testified that IHG's proposal "was basically a take-it or leave-it attitude," and that IHG told CIP what "the deal should be and if [CIP] didn't like it, [there] wouldn't be any deal." Lyons testified that he interpreted IHG's proposal as an anticipatory breach of the purchase agreement because IHG made it clear that it would only go to closing if the lease with the University was accepted as a condition precedent to the sale, and he

---

**2.** IHG's correspondence referred to its obligation to pay both the $200,000 and $50,000 commissions. The trial judge found in his memorandum order, by letter of November 18, 1982, IHG acknowledged that "We have entered into a contract with the sellers of The Connecti-cut Inn dated November 16, 1982, which contract, in paragraph 14 thereof, obligates us to pay Reiman & Company a commission of $200,-000.... * * * We have also agreed ... to pay ... an additional commission ... of $50,-000...."

therefore informed IHG that the contract was terminated.

CIP put the motel back on the market. On January 20, 1983, IHG wrote CIP that it still considered the purchase agreement to be valid. CIP responded on January 24, 1983, that "purchaser has anticipatorily breached the Agreement" and threatened litigation if IHG interfered with other prospective deals. Appellant, who believed that IHG still wanted to purchase the motel, attempted unsuccessfully to arrange a new agreement between IHG and CIP. In November, 1983, CIP sold the motel to Van Ness Limited Partnership.[3]

Reiman filed suit against IHG in September 1983 for breach of contract and fraud. At the close of Reiman's case, the trial judge granted IHG's motion under Super. Ct.Civ.R. 41(b) to dismiss Reiman's breach of contract claim for the $200,000 commission on the ground that Reiman's evidence did not demonstrate that IHG prevented the occurrence of the closing,[4] but denied IHG's motion to dismiss Reiman's claim for the $50,000 commission on the ground that a factual issue remained whether this commission was independent of the $200,000 commission for the sale of the motel and involved separate consideration for other services that Reiman rendered to appellees. At the close of IHG's case, the judge entered judgment for Reiman on the $50,000 commission, ruling that Reiman had performed services for IHG independent of the purchase agreement between CIP and IHG and that IHG's promise to pay the $50,000 was not conditioned on the closing of the deal but that the closing was simply the date on which this separate commission was due and payable. Reiman and IHG filed motions for reconsideration. The trial judge, by memorandum order, denied Reiman's motion and granted IHG's motion.

In his memorandum order the trial judge found that

[o]n January 17, 1983 [IHG] refused to go forward with the purchase of the motel pursuant to the terms of the November 16, 1982 Purchase Agreement and represented that they would go forward only if the terms of that agreement were substantially modified. The owners [CIP] were at all times ready, willing and able to go forward with the sale of this motel. The Court found and finds that there was no reason justifying [IHG] in refusing to go forward with the purchase of the motel.[5]

Nevertheless the judge rejected Reiman's argument that his right to the commissions matured when the purchase agreement was signed and that IHG's subsequent failure to purchase the motel would not defeat that right. Instead the judge found that under the unambiguous terms of the purchase agreement and the correspondence between the parties, Reiman was entitled to both commissions only

**3.** CIP refused to pay Reiman his commission for the sale of the motel until after he obtained a judgment in the federal court. The court ruled that CIP was obligated, under the original oral commission agreement between CIP and Reiman in 1981, to pay Reiman's commission once the sale was completed. *Reiman & Co. v. Eromanga Invs., N.V.*, 622 F.Supp. 13 (D.D.C.1985).

**4.** The trial judge's oral findings at the close of Reiman's case acknowledged that Reiman had located IHG pursuant to his listing agreement with CIP and that the parties had entered into a purchase agreement on November 16, 1982. In concluding, however, that Reiman had failed to meet his burden of proving IHG had anticipatorily breached the contract to purchase the motel, the trial judge found that IHG's conduct did not evidence "outright verbal repudiation or repudiation by action" of the contract, but was an effort to negotiate modifications of the purchase agreement. The trial judge found that it was the angry overreaction of CIP's managing partner, Lyons, on January 17, 1983, to IHG's overtures for further negotiations that precipitously ended the contract discussions.

The trial judge also granted IHG's motion for summary judgment on Reiman's fraud count. Reiman does not appeal that judgment.

**5.** When the trial judge issued his memorandum order in response to the parties' motions for reconsideration, he changed his findings on which party had anticipatorily repudiated the contract. The judge found that CIP was ready, willing and able to sell, but IHG had unjustifiably refused to purchase the motel. Presumably, upon reflection, the trial judge realized that IHG had committed itself to purchase the motel under the terms in the purchase agreement of November 16, 1982, and that nothing in the agreement provided that IHG could unilaterally modify its terms.

if IHG actually purchased the motel. Reiman appeals from the denial of his motion for reconsideration of the dismissal of his breach of contract claim for the $200,000 commission and the granting of IHG's motion for reconsideration of the judgment awarding Reiman the separate $50,000 commission.

## II.

The granting or denial of a motion for reconsideration will be disturbed by this court only upon a showing of an abuse of discretion. *Wallace v. Warehouse Employees Union*, 482 A.2d 801, 810 (D.C. 1984) (citations omitted). Reiman contends that the trial judge abused his discretion by refusing to vacate the dismissal of his breach of contract claim for the $200,000 commission pursuant to Super.Ct.Civ.R. 41(b). Reiman maintains, citing *Marshall v. District of Columbia*, 391 A.2d 1374 (D.C.1978), that he has presented sufficient evidence to withstand the motion to dismiss. He relies on the trial judge's memorandum order and the purchase agreement as evidence that he adequately demonstrated a breach of contract in which the promisor, IHG, wrongfully prevented the condition to its performance. It similarly follows, Reiman maintains, that the trial judge also abused his discretion in granting IHG's motion for reconsideration of the judgment awarding him the $50,000 commission.

Under Rule 41(b) the trial court may not dismiss the action unless upon the facts and the law the plaintiff has shown no right to relief. *Bay Gen. Indus., Inc. v. Johnson*, 418 A.2d 1050, 1054 (D.C.1980). Based on the trial judge's finding of facts at the close of Reiman's case-in-chief, Reiman demonstrated facts which, under the prevention doctrine, established a claim upon which relief could be granted. Accordingly, the trial judge erred in dismissing the breach of contract claim for the $200,000 commission and in denying Reiman's motion for reconsideration. Similarly, the trial judge erred in ruling that Reiman would not be entitled to the $50,000 commission under the prevention doctrine

when it granted IHG's motion for reconsideration. *See generally Johnson v. United States*, 398 A.2d 354, 364 (D.C.1979) (an abuse is demonstrated if the trial court has made an error of law); *cf. In re Tyree*, 493 A.2d 314 (D.C.1985).

The prevention doctrine "is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure." 5 W.H.E. JAEGER & S. WILLISTON, WILLISTON ON CONTRACTS § 677, at 224 (3d ed. 1967) (footnote omitted). This jurisdiction has long adhered to the prevention doctrine. *See, e.g., Minmar Builders, Inc. v. Beltway Excavators, Inc.*, 246 A.2d 784, 787 (D.C.1968); *Matthew A. Welch & Sons, Inc. v. Bird*, 193 A.2d 736, 738 (D.C.1963); *Horlick v. Wright*, 104 A.2d 825, 827 (D.C. 1954). Recently this court applied the prevention doctrine to a real estate brokerage claim. *Mike Palm, Inc. v. Interdonato*, 547 A.2d 1016 (D.C.1988); *see also Buckner v. Tweed*, 81 U.S.App.D.C. 256, 157 F.2d 211 (1946), *cert. denied*, 330 U.S. 825, 67 S.Ct. 866, 91 L.Ed. 1275 (1947); *see generally* WILLISTON ON CONTRACTS, *supra*, § 677, at 226–30 & n. 4.

As a general rule, a broker is entitled to receive a commission when the broker procures a buyer who is ready, willing and able to effect the purchase on terms stipulated by the seller. *Mike Palm, supra*, 547 A.2d at 1020. Although the party who promises to pay the broker's commission can make its performance contingent upon the consummation of the sale between the seller and the buyer, or any other lawful condition to which the parties agree, if the promisor wrongfully prevents the occurrence of that condition, then the condition is excused. *Id.* The promisor can avoid its duty to pay the brokerage commission only if the listing agreement explicitly provided that the promisor retained the right to prevent the occurrence of the condition for any reason. *Id.*

IHG had agreed to pay the original $200,000 commission contemplated by the listing agreement and an additional $50,000 com-

mission. The listing agreement between Reiman and CIP, the purchase agreement between CIP and IHG which Reiman signed, and the correspondence between Reiman and IHG, conditioned the payment of the brokerage commissions to Reiman on the closing of the motel deal. IHG relies on dictum in *Gill v. American Sec. Corp.*, 209 A.2d 629 (D.C.1965), to argue that it is not obligated to pay Reiman's commissions because they were expressly conditioned upon the closing. In *Gill*, the broker found a buyer ready, willing and able to meet the terms of the seller for the purchase of the property, but the seller decided that it could obtain a higher price for the property and rejected the buyer's offer, thereafter selling the property to a different purchaser through a second broker at a price higher than that in the listing agreement. The first broker successfully sued to recover his commission on the grounds that he had done all that was expected of him, notwithstanding a provision in the listing agreement that "[o]wners reserve the right to reject any offer until it is accepted in writing." *Id.* at 631. The court observed that if the sellers

> had wanted to make the broker's commission dependent upon the ultimate execution of a contract of sale between themselves and the prospective purchaser produced by the broker, they could have easily done so by plain words to that effect in the listing agreement. Absent such express limitation, we are of the opinion that the broker who produces a buyer ready, willing and able to buy on the seller's terms earns his commission.

*Id.*

IHG's reliance on the dictum in *Gill* clearly begs the question under the prevention doctrine which focuses on whether the fault or misconduct of the promisor makes fulfillment of the condition precedent impossible. The parties, of course, are entitled to "prescribe any conditions, arbitrary or otherwise, upon which the right to a commission shall be dependent." *Id.* (citing *Dixon v. Bernstein*, 86 U.S.App.D.C. 336, 182 F.2d 104 (1950)). But, as recently pointed out in *Shear v. National Rifle Ass'n of America*, 196 U.S.App.D.C. 344,

606 F.2d 1251 (1979), for the promisor to avoid the prevention doctrine, he must expressly retain the right to frustrate the condition precedent. *Id.* at 349, 606 F.2d at 1253–54. In *Shear*, a listing agreement provided that the broker was to be paid a commission " 'contingent on settlement' " and "when the sale was 'fully consummated' "—the precise language recommended by the *Gill* dictum. Nevertheless the court held that this language was insufficient to excuse the seller's obligation to pay the commission where the seller allegedly prevented the occurrence of the sale through its own fault or misconduct. The court held that the only instance in which "[t]he prevention doctrine does not apply [is] when the contract, in effect, authorizes prevention," 196 U.S.App.D.C. at 349, 606 F.2d at 1255–56, as for example, in *Dixon*, where the listing agreement between the prospective buyer and the broker provided that the commission was contingent upon settlement and that the buyer could withdraw from the sale "for any reason whatsoever." *Dixon, supra,* 86 U.S.App.D.C. at 336, 182 F.2d at 104. In other words, the contract expressly authorize[d] a party to prevent a condition from occurring," and the broker "assumed the risk that the seller would frustrate the sale...." *Shear, supra,* 196 U.S.App.D.C. at 349, 606 F.2d at 1256.

Similarly, in *Mike Palm, supra,* 547 A.2d 1016, this court held that where the listing agreement contains a provision "entitling the broker to receive a commission if the property were 'sold,' " the agreement must also contain "explicit limiting language" if the promisor intends to reserve the right to defeat a broker's commission if the sale is not consummated because of the promisor's fault or misconduct. *Id.* at 1021. The court referred to the dictum in *Gill* that a promisor could limit the broker's right to a commission by " 'mak[ing] the broker's commission dependent upon the ultimate execution of a contract of sale,' " *id.* at 1020 (quoting *Gill, supra,* 209 A.2d at 631), but held, relying on *Dixon*, that the "use of the word 'sold' or 'sell' unaccompanied by an explicit indication that [promisor] re-

1134

served the right to rescind the listing agreement 'for any reason,'" did not defeat the broker's right to his commission. *Id.* (citations omitted).

■ IHG promised to pay the $200,000 and $50,000 commissions to Reiman only if IHG went to closing on the motel, but nowhere explicitly reserved its right to prevent the occurrence of the condition precedent. The trial judge found in his memorandum order that CIP was "at all times ready, willing and able to go forward with the sale," while IHG "represented that [it] would go forward only if the terms were substantially modified," and "that there was no reason justifying [IHG] in refusing to go forward with the purchase of the motel." These findings are supported by evidence in the record and not clearly erroneous. *See Moore v. United States,* 457 A.2d 406, 408 (D.C.1983); *Bell v. District of Columbia Dep't of Corrections,* 403 A.2d 330, 332 n. 4 (D.C.1979); D.C.Code § 17–305(a) (1981). Notwithstanding the trial judge's different oral findings, upon reconsideration the judge found that IHG had breached its contract and set aside its earlier oral findings to the extent that they were inconsistent with the memorandum order. Reiman testified that to his knowledge there was nothing that would have prevented CIP from closing on the motel on January 17, 1983. CIP's attorney testified that CIP was ready, willing and able to close, and CIP's managing partner Lyons testified that CIP had done everything necessary for settlement. In addition, CIP's attorney and managing partner both testified that IHG would not close unless CIP agreed to make the sale of the motel contingent upon IHG obtaining a lease with the University of the District of Columbia. Neither party challenges these findings of contract and breach.

IHG does not deny that it had assumed the responsiblity to pay Reiman's commissions. Nor does it claim that discovery of the increase in the outstanding motel debt entitled it to withdraw from its obligation under the purchase agreement to buy the motel. Its reliance on the condition precedent of closing in paragraph 14 of the purchase agreement and on Reiman's assent thereto is misplaced since that language did not place on Reiman the risk that IHG might anticipatorily breach the contract through its unilateral efforts to modify the terms of the contract. *See, e.g., Order of Ahepa v. Travel Consultants, Inc.,* 367 A.2d 119, 125 (D.C.1976), *cert. dismissed,* 434 U.S. 802, 98 S.Ct. 30, 54 L.Ed.2d 60 (1977). Nor can IHG rely on the trial judge's oral findings of fact, since the trial judge has set them aside, in contending that CIP, and not IHG, prevented the closing from occurring.

■ Accordingly, we hold that the trial judge abused his discretion in denying Reiman's motion for reconsideration and in granting IHG's motion for reconsideration. The purchase agreement did not authorize IHG to prevent the closing on the motel and the trial judge found that, based on the evidence in Reiman's case-in-chief, IHG prevented the closing on the motel from occurring through its own misconduct or fault. Therefore, although Reiman presented a prima facie case of IHG's liability under the prevention doctrine, since IHG did not have an opportunity to present its defense that it did not wrongfully prevent the closing, we reverse and remand for a new trial.

*Reversed and remanded.*[6]

6. Although Reiman received a commission of $200,000 from CIP for the eventual sale of the motel to another purchaser nearly a year after IHG's repudiation, IHG does not argue that this precludes Reiman from recovery in the instant case. IHG's obligation to pay Reiman's commissions arose when it prevented the closing under the purchase agreement that it had with CIP. That obligation is completely different

from the obligation to pay Reiman a commission that arose when the property was sold to a different buyer. *See Massengale v. Transitron Elec. Corp.,* 385 F.2d 83, 90 (1st Cir.1967) (wrongful withdrawal from contract gave rise to one commission-producing obligation that was separate and distinct from the obligation that arose as a result of a later sale of the property). Awarding appellant $250,000 in brokerage com-

missions would not put him in a better position than he would have been had no breach occurred. *See Thorne v. White,* 103 A.2d 579, 580 (D.C.1954). Although the same property was involved, the commission that Reiman received from CIP when the motel was ultimately sold was the result of a separate transaction involving separate brokerage services with a different purchaser. Thus, this is not a case in which a broker is receiving—unbeknownst to the purchaser and seller—a double commission from both parties to the same transaction. *See, e.g.,*

*Bates v. Copeland,* 11 D.C. (MacArth. & M.) 50 (D.C.1879). Reiman worked on the deal between CIP and IHG up to the date when the breach occurred. The property went back on the market and Reiman put together a deal with a different purchaser which was consummated ten months after IHG's breach. Contrary to IHG's argument at trial, the "equities" do not cut in favor of IHG simply because Reiman eventually received a commission on the sale of the motel.