**DALE DENTON REAL ESTATE, INC., Appellant,**

v.

**Brian FITZGERALD and Allen Curtis, Appellees.**

**No. 91–CV–1012.**

District of Columbia Court of Appeals.

Argued Sept. 2, 1992.

Decided Dec. 29, 1993.

---

Raymond L. Gooch, for appellant.

Andrew FitzGerald, for appellees.

Before WAGNER and KING, Associate Judges, and MACK, Senior Judge.

PER CURIAM:

Appellant, a real estate brokerage firm, appeals from the trial court's denial of its motion for summary judgment and the *sua sponte* dismissal of its action seeking a commission on the sale of residential property previously owned and sold by appellees after the expiration of an exclusive listing period in a contract between the parties. Appellant, urging solely that it was the procuring cause of the sale, contends that trial court erred in not following this jurisdiction's legal precedent. We affirm.

## I.

On September 5, 1989, appellant, Dale Denton Real Estate, Inc., by and through its agent, Kevin Talley, entered into an exclusive listing agreement with appellees, Brian Fitz-Gerald and Allen Curtis, to sell property located at 5425 Sherier Place, Northwest. The agreement was for a 90–day term and recited a sales price of $543,000 and 6% of the sales price for the agent's commission.

The original listing agreement had a "protection" period that provided for the payment of the commission after the termination of the listing contract:

> if the Property is sold, conveyed, or otherwise transferred within 90 days ... to anyone to whom the Property has been shown by Broker, or anyone else, including the Seller, prior to final termination of this listing contract. ...

During the term of the listing, appellant introduced Harry and Ann Wallace to the property.

After viewing the property on other occasions with the Wallaces, on January 14, 1990, Mr. Talley informed appellees that he had a prospective buyer. As the initial listing agreement had expired, the parties, on January 15, 1990, executed a second listing agreement which conditioned appellant's commission to be earned upon the sale to the Wallaces under the contract dated January 17, 1990. The standard provision of the contract that set forth the protection period in the earlier contract and the listing term for the contract were not completed.[1] After subsequent amendments to the listing agreement, appellees, on January 18, 1990, accepted the Wallaces' contract offer which was contingent upon the sale of the Wallaces' residence.[2]

As the Wallaces were unsuccessful in finding a buyer for their residence, the contracting parties terminated the sales contract and, thus, the second listing agreement expired. Appellees then informed appellant that they would try to sell the property by themselves. Two weeks following the termination of the sales agreement, the Wallaces received an offer for their home. The Wallaces and appellees undertook independent negotiations, and on April 10, 1990, they entered into another sales contract which ultimately resulted in settlement. Appellant then brought action against appellees for a commission on the sale on grounds that its previous efforts were the procuring cause of the sale.

---

**1.** We take notice of the fact that the symbol "N/A" appears on the line specified for the commission.

**2.** Although the sales contract was dated January 17, 1990, appellees and the Wallaces signed the contract on January 18, 1990. The listing agreement indicated that appellant's commission would be earned upon the sale to the Wallaces pursuant to the sales contract dated January 17, 1990.

Following a hearing on appellant's motion for summary judgment, the trial court concluded that no material facts were in dispute and that appellees were entitled to judgment as a matter of law. The trial court denied appellant's motion and dismissed the case, *sua sponte*. In his opinion, the trial judge explained that, although appellant was the procuring cause of the sale, there was a conflict in precedent case law [3] and he, therefore, adopted the Restatement's view [4] that absent bad faith by the principal, a broker is not entitled to a commission where a prospective buyer located by him purchases the property after the period of the broker's exclusive listing had expired. The court concluded that appellant implicitly conceded that the terms upon which it agreed to earn its commission were not fulfilled and, therefore, appellees were entitled to judgment as a matter of law. From this standpoint, we address appellant's claims.

## II.

In reviewing a trial court's summary judgment, we look to whether a factual issue existed which would preclude the grant of summary judgment. *Word v. Ham*, 495 A.2d 748, 750 (D.C.1985) (citing *Dresser v. Sunderland Apartments Tenants Ass'n*, 465 A.2d 835 (D.C.1983)). Appellant concedes that the *facts* are undisputed. [Tr. 9] [5] Where facts are not in dispute and a question of law is before an appellate court, reversal of the trial court's judgment is warranted if the trial court reached an erroneous conclusion. *Woods v. Poor*, 29 App.D.C. 397 (1907). However, a trial court's decision must be affirmed if the result is correct, despite the fact that the court may have relied upon a wrongful ground. *Marinopoliski v. Irish*, 445 A.2d 339, 340 (D.C.1982) (citing *Helver-*

*ing v. Gowran*, 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224 (1937)). We are left to decide whether the trial court misinterpreted this jurisdiction's precedent case law and whether the precedent case law supports the appellant's *ex contractu* claim for a commission.

## III.

Unlike the trial court, we find no inconsistency in precedent in our reading of *Rieffer* and *Facchina*. The issue in both cases was the factual one of whether the broker was the procuring cause of the sale. In *Rieffer*, there was an expired exclusive listing agreement and a trial court's finding that the broker was not the procuring cause of the sale. This finding was supported by the fact that the purchaser "knew the owner and knew all about the property, because she was actually occupying it long before the plaintiff broker came upon the scene." *Rieffer*, *supra* note 3, 53 A.2d at 786. In addition, this Court was persuaded by the fact that there was no evidence of fraud or misrepresentation. *Id.* In *Facchina*, there was a non-exclusive listing agreement and a trial court's finding that the broker was the procuring cause of the sale. In that case, this Court found no error with the trial court's finding because the evidence demonstrated that the buyers were first interested in the property by the broker's advertisement, they were shown the property through the broker, and submitted an offer through the broker, which was rejected. *Facchina*, *supra* note 3, 109 A.2d at 582. Here, we have an expired exclusive listing agreement that conditioned the broker's right to its commission upon a separate transaction (not occurring during the life of the agreement) and the trial court accepted as an undisputed fact that the broker was the procuring cause.[6]

---

**3.** The trial judge alluded to *Rieffer v. McGuire*, 53 A.2d 784 (D.C.1947), and *Facchina v. Sullivan*, 109 A.2d 581 (D.C.1954).

**4.** RESTATEMENT (SECOND) OF AGENCY § 446 (1957).

**5.** "Tr." refers to the transcript from the March 7, 1991 hearing on the appellant's motion for summary judgment.

**6.** Although neither court in *Rieffer* and *Facchina* addressed whether the type of listing agreement

should be considered in determining whether the broker is entitled to his commission, we deem it relevant to note that an exclusive listing agreement is designed to provide more protection to a broker than a non-exclusive listing agreement.

Thus, while under a non-exclusive listing agreement more than one broker may be hired and the broker who produces a ready, willing, and able buyer is entitled to a commission, under an exclusive listing agreement the particular broker is protected for the *duration* of the employment contract. 7 RICHARD R. POWELL, POWELL ON

Although we agree with appellant that *Rieffer* and *Facchina* are not in conflict, we do not accept appellant's contention that these cases support its *ex contractu* claim for a commission. Specifically, appellant contends that these cases support the proposition that in absence of any legal remedy available under a brokerage agreement, a broker is entitled to a commission if the broker was the procuring cause of the sale. We disagree with this latter contention.

■ Appellant's reliance on *Rieffer* and *Facchina* is misplaced as neither case involved an agreement where the parties consented to impose a condition upon the broker's right to a commission. The application of the "procuring cause" principle "presupposes the existence of a valid and *unconditional* contract." *Krebs v. Morgan*, 143 A.2d 518, 519 (D.C.1958) (emphasis added). Notwithstanding the general rule that a broker is entitled to a commission if he shows that he was the procuring cause of the sale, the seller is entitled to prescribe any lawful condition upon the broker's right to a commission to which the parties consent. *Mike Palm, Inc. v. Interdonato*, 547 A.2d 1016, 1020 (D.C.1988); *Gill v. American Sec. Corp.*, 209 A.2d 629, 631 (D.C.1965); *Dixon v. Bernstein*, 86 U.S.App.D.C. 336, 182 F.2d 104 (1950). Irrespective of appellant's contention that it was the procuring cause of the subsequent sale which was conducted directly between appellees and the buyer, we first look to the agreement for any conditions imposed on appellant's right to a commission. If such a condition was included in the listing agreement, we look to see whether this condition was fulfilled.

■ Here, the parties entered into a conditional contract where the condition was not fulfilled during the life of the contract. The parties' listing agreement incorporated appellees' contingency that appellant's commission would be earned upon the sale to the Wallaces in accordance with the terms of the January 17, 1990, contract.[7] As appellees

REAL PROPERTY § 938.16[2][c] (1949) (emphasis added).

7. As no contention has been made with respect to the interpretation of the listing agreement and

and the Wallaces were unable to consummate the sale, this contingency was not fulfilled and appellant had no right to a commission. When the validity of an agreement is dependent "upon the performance of a condition and this condition is not fulfilled, there can be no binding contract and no obligations arise." *Krebs, supra*, 143 A.2d at 519 (footnote omitted). However, if the failure to fulfill the condition is attributable to the fault or misconduct of the seller, then the broker may still be entitled to a commission provided he can show that he was the procuring cause of the sale. *Mike Palm, Inc., supra*, 547 A.2d at 1020. Since no contention was made that the contracting parties' failure to consummate the sale was caused by the fault or misconduct of appellees, the trial court did not err when it found the "procuring cause" issue to be immaterial.

## IV.

■ Lastly, the circumstances do not support appellant's *quantum meruit* claim. There is no need to resort to a quasi-contract claim based on *quantum meruit* if a true contract was in existence at the time the services were performed. *Bloomgarden v. Coyer*, 156 U.S.App.D.C. 109, 118, 479 F.2d 201, 210 (1973). The following passage provides a reasonable justification for this general rule:

> When parties enter into a contract[,] they assume certain risks with an expectation of a return. Sometimes, their expectations are not realized, but they discover that under the contract they have assumed the risk of having those expectations defeated. As a result, they have no remedy under the contract for restoring their expectations. In desperation, they turn to quasi-contract for recovery. This the law will not allow.

*Mass Transit Admin. v. Granite Const. Co.*, 57 Md.App. 766, 776, 471 A.2d 1121, 1126 (1984) (quoting *Industrial Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp.*, 104 Ill.

finding no ambiguity in the agreement, we interpret its terms by their plain and obvious meaning. *Gandal v. Telemundo Group, Inc.*, 781 F.Supp. 39, 45–46 (D.D.C.1992).

App.3d 357, 360–61, 60 Ill.Dec. 100, 103, 432 N.E.2d 999, 1002 (1982)).

■ During the time that appellant performed services for appellees, there was a true contract that set forth each parties' obligations. Appellant agreed that appellees' obligation to pay its commission would be conditioned upon the consummation of a specific sale. Unfortunately for appellant, the conditions required for payment of the commission under the contract were not met. It would not be appropriate to allow appellant to recover on a *quantum meruit* claim merely because it failed to protect its interests in the listing agreement.[8]

### V.

In conclusion, we find that the trial court was incorrect in its reasoning that *Rieffer* and *Facchina* were in conflict.[9] However, this misinterpretation was not fatal to the trial court's decision.[10] As neither the precedent case law relied upon by appellant nor the circumstances of the present case before us support appellant's *quantum meruit* claim, it was not error for the trial court *sua sponte* to dismiss appellant's motion and enter a judgment as a matter of law for the appellees.

*Affirmed.*

---

8. Any ambiguity in a contract is generally construed against the party who drafted it. *Cowal v. Hopkins,* 229 A.2d 452, 454 (D.C.1967) (citations omitted). Here, the listing agreement was on a form provided by appellant.

9. Since we find that *Rieffer* and *Facchina* are distinguishable from the present case before us, we need not address appellant's arguments as to the *stare decisis* doctrine.

10. *See Marinopoliski, supra,* 445 A.2d at 340.