**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 98-10838
_____

JOSE MENDOZA; MARALI CORP,

Plaintiffs - Appellees-Cross-Appellants,

VERSUS

COMSAT CORPORATION,
formerly known as Communications Satellite Corporation,

Defendant - Appellant-Cross-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Texas
_____

February 3, 2000

Before DAVIS, JONES, and MAGILL,[*] Circuit Judges.

MAGILL, Circuit Judge:

The principal issue in this appeal is whether a broker can recover an ex contractu commission on a procuring cause theory under the prevention doctrine in the absence of bad faith on the part of the seller. In this case, a written agreement between Jose Mendoza (Mendoza) and COMSAT Corporation (COMSAT) expressly conditioned Mendoza's right to a commission upon a sale being made either before or within ninety days after his termination. When

_____

[*] Circuit Judge of the Eighth Circuit, sitting by designation.

COMSAT refused to pay Mendoza a commission for a sale made nearly one year after Mendoza's termination, Mendoza commenced the present action against COMSAT. Despite finding that COMSAT did not breach the covenant of good faith and fair dealing, the jury looked beyond the written agreement and awarded Mendoza $1,000,000 because he procured a ready, willing and able buyer for COMSAT's domestic satellite system. The district court reformed the jury award to $3,054,454.66, the amount to which Mendoza would have been entitled to under his representative agreement had the sale occurred either before or within ninety days after his termination.

We believe that the jury's finding that COMSAT did not breach the covenant of good faith and fair dealing precludes recovery on a procuring cause claim under the prevention doctrine. Thus, we reverse and vacate the district court's order insofar as it awards Mendoza judgment.

**I.**

COMSAT builds and operates satellite-based communications systems. In its effort to recruit foreign buyers, COMSAT assigns sales representatives to territories in different parts of the world. On April 16, 1986, COMSAT and Mendoza entered into a representative agreement (Representative Agreement) in which Mendoza agreed to market COMSAT's products to the Côte d'Ivoire. The Representative Agreement expressly conditioned Mendoza's right to a commission upon a sale being made either before or within ninety

2

days after his termination.[1]  On January 6, 1989, the parties amended Mendoza's commission rate, but did not expressly abrogate or alter the ninety-day extension period during which Mendoza would be eligible for commissions on post-termination sales.  As amended, the Representative Agreement provided Mendoza with the right to an 8% commission for any contract awarded to COMSAT as a "direct result" of his efforts.

Mendoza initiated his marketing efforts by contacting the Ivorian Minister of Post and Telegraph, Aka Bonny (Aka)in 1985. Aka immediately expressed interest in acquiring a new telephone system to enhance the prestige of his office.  In October 1986, Aka received approval to purchase two satellite earth-stations for his department from COMSAT in the amount of $3,000,000.  For his part in these sales, Mendoza received commissions totaling $500,000.

Following these sales, Mendoza and COMSAT focused their efforts towards securing a contract for the sale of a domestic satellite system (Domsat system) to the Côte d'Ivoire. Specifically, Mendoza and Aka orchestrated an $80,000,000 Domsat

---

[1]In relevant part, the Representative Agreement reads:

If either party terminates this Agreement in accordance with this Article and within ninety (90) days of the termination date sales are made in the Territory as a result of a quote made by the Representative or [COMSAT] prior to the termination date,  such sales shall count for a commission which shall be negotiated between the Parties involved; provided, however, that no commission shall be due regarding sales in violation of the representations set forth in Article III.

3

package with five components, including: 1) a phone system for Aka's department, 2) a radio-based security network for the Minister of Defense, 3) a national radio-television network for the Minister of Communications, 4) a telecommunications network linking the Côte d'Ivoire to its embassies in other West African countries, and 5) a distribution system for foreign television in the Côte d'Ivoire. Much to Mendoza's chagrin, Ivorian politics and economics hampered his ability to sell the Domsat project to Ivorian officials. Despite approximately five years of effort, Mendoza failed to persuade Ivorian officials to purchase COMSAT's $80,000,000 Domsat package.

In June 1990, COMSAT alerted Mendoza that he was going to be terminated for lack of progress. Upon hearing this news, Mendoza promised progress and asked for an additional thirty days to close the deal. COMSAT gave Mendoza an additional six months, a time during which Mendoza admits nothing positive occurred. On October 23, 1991, COMSAT notified Mendoza by letter that the Representative Agreement would be terminated in ninety days on January 21, 1992. Following Mendoza's termination, COMSAT took several actions designed to secure a sale to the Côte d'Ivoire. In May 1992, COMSAT hired a new sales representative, Loum Diagne, an Ivorian businessman and professor with substantial government contacts. Next, COMSAT attempted to mute French resistance to the project by entering into a strategic partnership with the French

4

telecommunications giant, Alcatel.[2]  In May 1992, COMSAT made a new bid on the television distribution system, which invited the Côte d'Ivoire to select from a radio-television "shopping list." COMSAT's efforts succeeded in securing a sale for a much less ambitious project than the one Mendoza marketed to Côte d'Ivoire officials.  Approximately one year after Mendoza's termination became effective, COMSAT made a sale to the Côte d'Ivoire valued at approximately $38,180,683.31.  Mendoza was not paid a commission on this sale.

On July 21, 1993, Mendoza brought suit against COMSAT for a commission allegedly earned as the result of having procured a contract for the sale of COMSAT's Domsat system.  Mendoza's complaint alleged the following causes of action: 1)breach of contract, 2) breach of the implied contractual covenant of good faith and fair dealing, 3) conspiracy to tortiously interfere with contract, 4) procuring cause, and 5) breach of good faith and fair dealing.  The district court granted COMSAT's motion for summary

---

[2]The Côte d'Ivoire has historically maintained very close relations with France, having been a French colony until recently in this century.  The Côte d'Ivoire's first president, Félix Houphouët-Boigny, negotiated independence from France on August 7, 1960, yet maintained a pro-French authoritarian regime until he died in 1993.  One office always controlled by French interests is the Grand Traveaux, or Minister of Large Public Works.  Mendoza testified at trial that "all of Mr. Aka's work comes under the auspices of the Grand Traveaux."  In his brief, Mendoza admits that the Grand Traveaux was an "enemy . . . who would have preferred to see [the] contract go to the French."  (Appellee's Br. at 14-15) Mendoza's concedes that Alcatel and the Grand Traveaux were closely aligned and determined to prevent the contract from going to COMSAT.  (Appellee's Br. at 15)

judgment on Mendoza's claims for breach of contract and breach of good faith and fair dealing, and submitted the remaining three claims to the jury. The jury found that COMSAT neither breached the implied covenant of good faith and fair dealing nor conspired to tortiously interfere with Mendoza's contract. However, the jury found Mendoza entitled to a commission on his procuring cause claim and awarded him $1,000,000. The district court reformed the jury's award to $3,054,454.66 to reflect the 8% commission specified in the Representative Agreement.

On appeal, COMSAT argues that 1) the jury's finding of procuring cause was not supported by sufficient evidence, 2) recovery under the prevention doctrine is barred by the express terms of the parties' Representative Agreement because COMSAT did not breach the covenant of good faith and fair dealing, and 3) Mendoza's failure to move for a directed verdict on the issue of damages prohibited the district court's reformation of the jury award. Mendoza cross-appeals, arguing that the district court erred in 1) granting COMSAT summary judgment on Mendoza's breach of contract claim, 2) granting COMSAT summary judgment on Mendoza's remedy under the Texas Sales Representative Act (TSRA), and 3)refusing to deem undenied averments contained in Mendoza's amended complaint as admissions and grant Mendoza judgment as a matter of law.

Because we find that the jury's finding that COMSAT did not

6

breach the covenant of good faith and fair dealing precludes recovery on a procuring cause claim under the prevention doctrine, we reverse the decision of the district court insofar as it awards Mendoza judgment.  We do not reach the other issues COMSAT raises on appeal.  We affirm all orders and rulings from which Mendoza cross-appeals.

## II.

COMSAT's primary claim is that the Representative Agreement expressly precludes recovery under the common law procuring cause principle.  In short, COMSAT contends that the parties contracted around procuring cause by substituting a fixed ninety-day time period during which Mendoza could receive a commission for any post-termination sale made as a direct result of his efforts. COMSAT argues that this condition controls unless it somehow wrongfully prevented the sale from being made within the ninety-day time period.  This case requires us to analyze the relationship between the prevention doctrine and the procuring cause principle under District of Columbia law.[3]

Under District of Columbia law, in the absence of a conditional contract, a broker of a sale is entitled to receive a

---

[3]The parties agreed at oral argument that the issues of procuring cause and breach of contract are controlled by District of Columbia law.  Mendoza contends that his claims for damages under the TSRA is controlled by Texas law.

commission when the broker procures a buyer who is ready, willing and able to effect the purchase on the terms stipulated by the seller. <u>See</u> <u>Dale Denton Real Estate, Inc. v. Fitzgerald</u>, 635 A.2d 925, 928 (D.C. 1993) (noting that "application of the 'procuring cause' principle 'presupposes the existence of a valid and unconditional contract.'")(quoting <u>Krebs v. Morgan</u>, 143 A.2d 518, 519 (D.C. 1958)). Moreover, the parties' failure to consummate the sale does not defeat the broker's right to commission "'where such failure is <u>attributable to the fault or misconduct of the seller</u>.'" <u>Mike Palm, Inc. v. Interdonato</u>, 547 A.2d 1016, 1020 (D.C. 1988) (quoting <u>Gill v. American Security Corp.</u>, 209 A.2d 629, 631 (D.C. 1965)) (emphasis added). The seller is entitled, however, to make the broker's employment contingent upon any lawful condition to which the parties consent. <u>See</u> <u>Fitzgerald</u>, 635 A.2d at 928. Thus, in determining whether a broker is entitled to a commission for procuring a ready, willing and able buyer, District of Columbia courts first look to the parties' agreement for any conditions imposed on the broker's right to a commission. <u>See</u> <u>id.</u> If the agreement contains such a condition, District of Columbia courts look to see whether the condition was fulfilled. <u>See</u> <u>id.</u>

Parties may condition a broker's right to a commission upon consummation of sale[4], rather than merely procuring a ready,

---

[4]District of Columbia courts have demonstrated a considerable reluctance to interpret the terms "sell" or "sold" so as to empower a seller with the right to defeat a broker's right to a commission
(continued...)

8

willing and able buyer.  See Reiman v. International Hospitality Group, 558 A.2d 1128, 1132 (D.C. 1989).  In this case, the Representative Agreement expressly conditioned Mendoza's right to post-termination commissions upon a sale being made either before

---

(...continued)
because a sale was not consummated.  See, e.g., Mike Palm, Inc. v. Interdonato, 547 A.2d 1016 (D.C. 1988).  In Interdonato, for example, the relevant provisions of the agreement provided that the broker would "undertak[e] to find a purchaser for [the seller's restaurant], whereupon a commission of ten percent would be paid to the broker if the restaurant was sold."  547 A.2d at 1018 (emphasis added).  Although the broker found a buyer who was willing to purchase the restaurant on the seller's terms, the seller refused to complete the sale because an unrelated prior agreement prevented the seller from making the sale until a later date.  Id.  The broker's agreement contained no mention of this alleged time-constraint.  The broker brought suit under the procuring cause principle.  The District of Columbia Court held that in the context of listing agreements, "sell" means something less than full consummation of transaction because the owner retains the right to reject any offer even though it meets the terms of the agreement. Id. at 1021.

    Interdonato is distinguishable from the present case for several reasons.  First, as opposed to Interdonato, the parties in this case expressly conditioned Mendoza's right to a commission upon a sale being made either before or within ninety-days after of his termination.  Thus, the issue is when, not if, a sale was made to the Côte d'Ivoire.  In this case, the sale was not consummated until approximately one year after Mendoza's ninety-day extension period expired.  Second, in this case, Mendoza's testimony indicates that he clearly understood that his right to a commission was contingent upon a sale being consummated within the ninety-day period.  In Interdonato, however, the broker apparently had no idea that a prior agreement restricted the restaurant owner's ability to sell the restaurant before a certain time.  In other words, in this case, interpreting the term "sale" to mean ultimate consummation does not frustrate the parties' intentions.  Finally, Interdonato was decided under a straight-forward procuring cause analysis with no reference to the prevention doctrine.  In this case, the critical issue is whether  procuring cause can come into play under the prevention doctrine in the absence of bad faith on the part of the seller.

or within ninety days following his termination.  This condition never occurred.

On October 23, 1991, COMSAT notified Mendoza by letter that the Representative Agreement would be terminated in ninety days on January 21, 1992.[5]  Mendoza's testimony indicates that he clearly understood that a sale had to be made before January 21, 1992, for him to be paid a commission.  Because COMSAT did not make a sale until approximately one year after Mendoza's ninety-day extension period expired, Mendoza was not entitled to a commission under the terms of the Representative Agreement.

## III.

## A.

The district court allowed the jury to go beyond the four corners of the Representative Agreement by submitting Mendoza's procuring cause issue to the jury.  The District of Columbia Court of Appeals has specifically noted that "[t]he application of the 'procuring cause' principle 'presupposes the existence of a valid and unconditional contract.'"  Dale Denton Real Estate, Inc. v. Fitzgerald, 635 A.2d 925, 928 (D.C. 1993) (quoting Krebs v. Morgan, 143 A.2d 518, 519 (D.C. 1958)) (emphasis added).  This case,

---

[5]The parties disagree on the effective date of termination. COMSAT contends January 21, 1992 was the effective date, while Mendoza's brief suggests that the effective date was February 15, 1992.  Because the parties did not consummate the sale until nearly one year after either alleged effective date, we find this issue immaterial to the present appeal.

however, involves a written agreement wherein the parties expressly conditioned Mendoza's right to a commission upon a sale being made either before or within ninety-days following his termination. In other words, the parties replaced common law procuring cause with a fixed time period during which Mendoza could receive a commission for any sale made as a "direct result" of his efforts. We must decide whether this condition should control unless COMSAT acted wrongfully to prevent its occurrence.[6]

As a general rule, if a contract expressly conditions the duty to perform upon the occurrence of a specified event, the duty to perform does not arise until that condition occurs. The doctrine of prevention is a well-recognized exception to this rule. This doctrine provides that when a promisor wrongfully prevents a condition from occurring that condition is excused. According to the Restatement of Contracts, the prevention doctrine is subsumed under the duty of good faith and fair dealing.

> The obligor's duty [of performance] is not discharged if occurrence of the event (a) <u>is the result of a breach by the obligor of his duty of good faith and fair dealing</u>, or (b) could not have been prevented because of impracticability and continuance of the duty does not subject the obligor to a materially increased burden.

Restatement (Second) Contracts § 230 (1979) (emphasis added). The

---

[6]In <u>Facchina v. Sullivan</u>, 109 A.2d 581 (D.C. 1954), a case heavily relied upon by Mendoza, the District of Columbia Court of Appeals held that the issue of good faith was immaterial to whether a broker was entitled to a commission under the procuring cause doctrine. Mendoza's reliance is misplaced because <u>Facchina</u> did not involve an agreement where the parties consented to impose a condition upon the broker's right to a commission.

Restatement view is consistent with District of Columbia law. See Reiman v. International Hospitality Group, 558 A.2d 1128, 1132 (D.C. 1989). In Reiman, the District of Columbia Court of Appeals suggested that wrongful conduct, as opposed to some less culpable form of fault, is a prerequisite to application of the prevention doctrine:

> Although the party who promises to pay the broker's commission can make its performance contingent upon the consummation of the sale between the seller and the buyer, or any other lawful condition to which the parties agree if the promisor wrongfully prevents the occurrence of that condition, then the condition is excused.

Id. (emphasis added). Using slightly different language, District of Columbia courts have similarly observed that "if the failure to fulfill a condition is attributable to the fault or misconduct of the seller, then the broker may be entitled to a commission provided he can show that he was the procuring cause of the sale." Fitzgerald, 635 A.2d at 928 (emphasis added).

Mendoza argues that a showing of bad faith is not required to trigger application of the prevention doctrine under District of Columbia law. We are not persuaded. Before a broker can escape the express conditions of a contract, the broker must prove that the seller acted wrongfully to prevent the broker from receiving a commission under the terms of a contract. See id.; Reiman, 558 A.2d at 1132. In other words, the jury should not have been allowed to consider common law procuring cause unless it first found that COMSAT wrongfully denied Mendoza a commission by

12

preventing a contractual condition from occurring.

**B.**

After dismissing Mendoza's breach of contract claim,[7] the district court submitted Mendoza's procuring cause claim to the jury. The district court first instructed the jury as follows:

> The law implies a duty of good faith and fair dealing in the contract between the defendant COMSAT and plaintiffs Jose Mendoza and MarAli Corporation. . . . This duty of good faith and fair dealing prevents a party from evading the spirit of the contract, willfully rendering imperfect performance, or interfering with the other party's performance.
>
> You may find a breach of the duty of good faith and fair dealing under the above definition if you find that either of the following occurred:
>
> 1. if COMSAT terminated Plaintiffs' representative contract for the purpose of depriving Plaintiffs of commissions for work already done; or
>
> 2. if COMSAT intentionally delayed in making a sale to the Ivory Coast or agreed to a lapse in negotiations with the Ivory Coast with the intent that the sale occur after Plaintiffs' right to a commission under the terms of the contract had expired.

The district court bundled this instruction with a definition of "procuring cause" and instructed the jury that it could consider the procuring cause issue only if it found that Mendoza breached the duty of good faith and fair dealing. The jury found that COMSAT did not breach this duty.

In a completely separate instruction, the district court

---

[7]Mendoza appeals the district court's granting of summary judgment on his breach of contract claim. We find this appeal meritless and affirm the district court's grant of summary judgment.

13

instructed the jury that it could find in favor of Mendoza under the procuring cause doctrine regardless of whether COMSAT acted in bad faith to prevent Mendoza from receiving a commission under the terms of the Representative Agreement:[8]

> Under the doctrine of procuring cause, sales representatives are entitled to commissions even after their representative contracts expire if they were the procuring cause of a sale that was ultimately consummated and if the seller hindered or prevented the consummation of the sale prior to the termination of the representative contract.

COMSAT argues that the district court erred in giving this instruction. We agree. In this case, the jury specifically found that COMSAT did not violate its duty of good faith and fair dealing. Under both the Restatement and District of Columbia law, an opposite finding is necessary before a broker can disregard conditions clearly expressed in the representative agreement and recover an ex contractu commission.

### III.

For the foregoing reasons, we reverse and vacate the judgment below insofar as it awards Mendoza judgment on his procuring cause claim. Based on our decision, we need not reach the other issues COMSAT raises on appeal. After careful consideration of the issues Mendoza raises in his cross-appeal, we affirm the district court's

---

[8]We reject Mendoza's argument that the terms "hindered or prevented" should be interpreted to mean some form of "wrongful conduct." The terms "hindered or prevented" can also encompass completely innocent behavior insufficient to trigger application of the prevention doctrine.

rulings in their entirety without further comment.